IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SUZANNE GORDON | : |
| | , |
| vs. | : CIVIL ACTION NO. JKB-05-3453 |
| | : |
| MAYOR AND CITY COUNCIL OF BALTIMORE, ET AL. | : |

**MEMORANDUM**

Pending and ready for disposition is defendants' motion to strike (Paper No. 26) and defendants' motion for summary judgment (Paper No. 27). The motions have been fully briefed and no hearing is necessary. Local Rule 105.6. For the reasons set forth below, the motion for summary judgment will be granted in part and denied in part and the motion to strike will be granted.

*I. Background*

The plaintiff was an employee of the Employment Retirement System (ERS) of Baltimore City. She has brought this action against the municipal defendant and two of her supervisors alleging violation of the Maryland Declaration of Rights (Count I), the United States Constitution (pursuant to 42 U.S.C. §1983, 42 U.S.C. §12101 and 42 U.S.C. §1985)(Count II), the Americans with Disabilities Act (ADA)(Count III), the Maryland Fair Employment Practices Act (FEPA)(Count IV), Title VII of the Civil Rights Act of 1964 (Count V) and 42 U.S.C. §1983 (Count VI). The crux of

plaintiff's complaint is that the defendants failed to make accommodations for her disabilities and terminated her because of those disabilities. The plaintiff claims migraine headaches, psychomotor slowing and carpal tunnel syndrome as disabilities.[1] The defendants claim that reasonable accommodations were made for the plaintiff in the workplace, on the one hand, and, on the other, that her employment was terminated due to unsatisfactory performance.

Plaintiff became an employee of ERS in January 2002. She alleges that discrimination against her included the denial of a Excel template for the forms that she was required to complete, designed specifically for her to compensate for her general motor

---

[1] The defendants contend that any claims relating to carpal tunnel syndrome are not part of this case. The defendants note that, for whatever reason, Ms. Gordon decided to excise carpal tunnel syndrome from the list of disabilities alleged in her discrimination complaint to the Baltimore City Community Relations Commission (See, Defendant's Exhibit U). Defendants argue, with citation to extensive supporting authority, that plaintiff's claim in this Court is limited to the claims made in her administrative complaint and that, therefore, her claim of carpal tunnel syndrome is not properly before the Court. The argument, which has some force, is ignored by the plaintiff in her response. However, defendants, to their credit, also note that the scope of a complaint in this Court is circumscribed not by the four corners of the administrative complaint but rather by what naturally would stem from the investigation of that complaint. See, EEOC v. General Electric Co., 532 F.2d 359 (4th Cir. 1976). The Court disagrees with the defendant regarding the implication of that holding to this case and finds that any reasonable investigation of the administrative complaint would include her claim of carpal tunnel syndrome.

slowing and to increase her production; the denial of leave when requested; the refusal to provide a window shade to address her migraine-producing light sensitivity or to reposition her computer screen to reduce glare; and management tolerance of mocking treatment by coworkers in regard to her slowness of speech. (Complaint, Paper No. 2; Charge of Discrimination, Defense Exhibit U). Plaintiff notes that in July, 2002, she was given a new employee evaluation that characterized as unacceptable her attendance and her speed in completing assignments. She complains further that she was placed on a Work Improvement Plan in October 2002 due to alleged deficiencies in attendance and production and that, in December, 2002, she was terminated, ostensibly for unsatisfactory performance and absenteeism. *Id.* Plaintiff appealed her termination to the Civil Service Commission and, after two hearings, the Commission issued an order directing that Plaintiff be reinstated. The hearing officer issued findings including the determinations that plaintiff was accorded procedural due process; that the city's claim of insubordination was unfounded; that certain facets of the Work Improvement Plan exceeded proper limits; that the city failed to provide plaintiff with the tools and training reasonably necessary for performance of her work, the goals of which were re-prioritized subsequent to her initial employment; and that, under the circumstances, the city did not

give the plaintiff a reasonable amount of time to improve her performance before discharging her. It was recommended that she be reinstated with back pay. (Defense Exhibit T). She was reinstated with full back pay and benefits.

## II. *Standard of Review*

Generally, an award of summary judgment is proper in federal cases when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party to demonstrate the absence of any genuine issue of material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party. *Ross v. Communications Satellite Corp.*, 759 F.2d 355 (4th Cir. 1985).

## III. *Analysis*

### A. *Count I-Maryland Declaration of Rights*

The Court finds that the moving party has not carried its burden of demonstrating the absence of any genuine issue of material fact. *See, Celotex, supra.* The issue of whether Ms. Gordon was given a reasonable amount of time prior to termination

4

to improve her performance under the Work Improvement Plan prior to her discharge arguably is a due process issue, notwithstanding the Civil Service Commission hearing officer's finding that the plaintiff did receive due process and notwithstanding the conclusory statement from the defendants that she was entitled to no process beyond what she received. Likewise, the defendant simply dismisses plaintiff's claim that she was denied timely and effective accommodations for her impairments and the tools and training required for her work, including the template which she requested to speed her work, as not rising to the level of constitutional protection, although the hearing officer made factual determinations leading to the conclusion that those failings were sufficient to render her termination unjustified. Viewing the facts, and the reasonable inferences that could be drawn from them, in a light most favorable to the plaintiff, the motion for summary judgment must be denied as to Count I.

### B. *Count II-Conspiracy*

The defendants, with supporting authority, posit that plaintiff's civil conspiracy claim pursuant to §1985 is barred under the intra-corporate immunity doctrine (*See, Zombro v. Baltimore City Police Department,* 868 F.2d 1364 (4th Cir. 1989); that the liability claims against individuals pursuant to the ADA are not justiciable (*See, Baird ex rel. Baird v. Rose,* 192 F.3d

4652 (4th Cir. 1999); and that § 1983 provides no substantive rights of its own, but rather is a remedial statute imposing liability for violation of other federal rights (*See H.R. v. Hornbeck,* 524 F. Supp. 215 (D. Md. 1981)). The plaintiff offers no opposition to these arguments. By separate Order, summary judgment will be awarded in favor of the defendants as to Count II.

### C. *Count III-ADA*

The defendants cite *Rohan v. Networks Presentations LLC,* 375 F.3d 266 (4th Cir. 2004) for the proposition that to establish a *prima facie* case of discriminatory discharge under the ADA, a claimant must show that (a) she is a qualified individual with a disability; (b) that she was discharged; (c) that she was fulfilling her employer's legitimate expectations at the time of the discharge; and (d) the circumstances of her discharge raise a reasonable inference of unlawful discrimination. The defendants argue first that Ms. Gordon cannot show that she was disabled within the meaning of the statute. To make the required showing, a claimant must demonstrate that she has an impairment or impairments that substantially limit a major life activity. A major life activity is a normal activity of living, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, reproducing and working. *See, Toyota Motor Mgf. Kentucky, Inc. v. Williams,* 534 U.S. 184 (2002).

A claimant may prove that she is substantially limited in a major life activity by showing that she was significantly restricted as to the condition, manner or duration under which she could perform the activity as compared to the average individual. *Id.* In this case, although the city determined that Ms. Gordon's conditions did not qualify as an ADA disability--a determination that, obviously, could be considered as self-serving--it nevertheless undertook to make various accommodations for her impairments, all of which impairments have a basis in medical records. Moreover, at least one finder of fact--the Civil Service Commission hearing officer--determined after hearing an extensive evidentiary presentation that the office accommodations in Ms. Gordon's work area were made to enhance her job performance; that the city did not allow a sufficient period to determine whether those accommodations speeded her work to meet goals; and that the refusal to provide the template was unreasonable. A fact-finder could draw a reasonable inference, therefore, that the accommodations were being made, in fact, because Ms. Gordon, when compared with the average individual, was significantly restricted in her ability to perform. Likewise, a fact-finder could draw a reasonable inference that, although Ms. Gordon was not meeting her employer's stated expectations at the time of her discharge, those expectations were not "legitimate" for the reasons found by the Civil Service

Commission hearing officer. The Court finds that Ms. Gordon has carried her burden of establishing a *prima facie* case of ADA discriminatory discharge. Moreover, the colorable claim of failure by the defendants to timely provide reasonable accommodations that could have speeded Ms. Gordon's performance to a satisfactory level cuts directly across the defense burden, once plaintiff has made out a *prima facie case,* to come forward with a legitimate reason for the discharge. Accordingly, summary judgment will be denied as to Count III.

### D. Count IV (FEPA)

The defendants, with supporting authority, posit that FEPA provides no private right of action to remedy alleged employment discrimination. *See, Willey v. Ward,* 197 F.Supp.2d 384 (D.Md. 2002); *Carson v. Giant Food, Inc.,* 187 F.Supp.2d 462 (D. Md. 2002); *Jordan v. CSX Intermodal, Inc.,* 991 F. Supp. 754 (D. Md. 1998). The plaintiff offers no opposition to this argument. By separate Order, summary judgment will be awarded in favor of the defendants as to Count IV.

### E. Count V (Title VII)

The clear gravamen of Ms. Gordon's claim relates, and relates only, to her physical impairments and the vehicle for such a claim is the ADA, not Title VII, which redresses discrimination based upon race, creed, gender and national origin. Summary judgment

will be awarded to the defendant as to Count V.

### F. Count VI (42 U.S.C. 1983)

The defendants rightly contend that § 1983 claims are not independent causes of action, but that the statute serves only to assert other federally protected rights. The defendants seek judgment on this count on the assumption of judgment in their favor in regard to the counts above. However, inasmuch as the Court has declined to award summary judgment as to Counts I and III, Count VI remains viable and summary judgment will be denied as to Count VI.

### G. Motion to Strike

The Scheduling Order that controlled the progress of this action provided *inter alia* that the plaintiff was required to make her Rule 26(a)(2) disclosures no later than March 6, 2006. That deadline passed without such disclosures and the defense, in turn, designated no opposing experts. On June 5, 2006, two weeks subsequent to the close of discovery, the plaintiff filed with the Court a paper designated "Notice of Service (Expert Revelations", which purported to indicate that Rule 26(a)(2) designation and disclosures had been made June 1, 2006, but, in fact, those designations and disclosures apparently did not meet the requirements of the rule. In any case, no leave of Court was sought to comply with Rule 26(a)(2) out of time and after the close of discovery. Plaintiff takes the position that the defense should

have known from other discovery the experts (her health care providers) she would call. The defense is not required to engage in that type of guesswork and make decisions regarding the employment and designation of opposing experts. The motion to strike (Paper No. 26) will be granted and the purported designation of experts by the plaintiff will be disallowed. Plaintiff's health care providers, of course, may offer testimony as fact witnesses.

Dated this ~~30th~~ day of October, 2006.

BY THE COURT:

_____
James K. Bredar
United States Magistrate Judge